UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| CHARLES BRUCE, individually; | ) | |
|---|---|---|
| MELISSA BRUCE, individually; MELISSA | ) | |
| BRUCE, a/n/f of Autumn Bruce; and | ) | 2:19-CV-00175-DCLC |
| CHARLES BRUCE, a/n/f of Autumn Bruce; | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JET.COM, INC., | ) | |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Jet.com, Inc. ("Defendant") has filed a Partial Motion to Dismiss [Doc. 19], seeking to dismiss Plaintiffs' federal Consumer Product Safety Act ("CPSA") claim. Defendant has also filed a corresponding Memorandum in Support [Doc. 15]. Plaintiffs Charles Bruce and Melissa Bruce ("Plaintiffs"), acting individually and in their capacities as next friends of their daughter, Autumn Bruce ("Autumn"), have responded in opposition [Doc. 29]. Defendant has replied [Doc. 30]. This matter is now ripe for resolution. For the reasons stated below, Defendant's Motion [Doc. 19] is **GRANTED**.[1]

---

[1] Plaintiffs filed a Motion for Leave to File Amended Complaint [Doc. 33] on August 13, 2020, which remains pending. Plaintiffs seek leave to amend their Complaint [Doc. 1] to add Walmart as a defendant and to add language to their claims under the Tennessee Consumer Protection Act [Doc. 33, pg. 3]. Because Plaintiffs' Proposed Amended Complaint [Doc. 33-1] would not change the Court's analysis of their CPSA claim, the Court will proceed with ruling on Defendant's Motion to Dismiss [Doc. 19]. If Plaintiffs are granted leave to amend their Complaint, the Court will dismiss Plaintiffs' CPSA claim from the Amended Complaint based on this Order.

1

## I. BACKGROUND

This action arises out of an incident involving a hoverboard (also known as a "self-balancing scooter") supplied by Defendant, which Autumn won through a giveaway as part of an anti-smoking campaign at her middle school [Doc. 1, ¶¶ 9-12]. After Autumn charged the hoverboard and turned it on one day, the hoverboard "started sparking and smoking, causing severe fire and smoke damage to Autumn's bedroom, and the rest of the home" [*Id.* at ¶ 17]. Plaintiffs and Autumn evacuated the home, called 911, and the Sullivan County Volunteer Fire Department arrived and extinguished the fire [*Id.* at ¶ 18]. Plaintiffs contend that "the home was uninhabitable due to fire and smoke damage, and [they were] required to live in a hotel while the fire was investigated and the home was repaired" [*Id.* at ¶ 20]. Plaintiffs further contend an investigation revealed the hoverboard caused the fire [*Id.* at ¶ 21].

Plaintiffs assert causes of action under products liability, negligence, intentional and/or negligent misrepresentation, the Tennessee Consumer Protection Act, breach of implied warranty, and the Consumer Product Safety Act [*see* Doc. 1]. Plaintiffs base their CPSA claim on Defendant's alleged violation of certain voluntary safety standards for hoverboards [*Id.* at ¶¶ 68-70]. Defendant moves to dismiss Plaintiffs' CPSA claim for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that a violation of voluntary standards does not give rise to a private right of action under the CPSA [Doc. 19].

## II. STANDARD OF REVIEW

A complaint must contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) eliminates a pleading or portion thereof that fails to state a claim upon which relief can

be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) requires the Court to construe the allegations in the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall*, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995).

However, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face." *Id.* at 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. Moreover, the Court need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft*, 556 U.S. at 678.

### III. ANALYSIS

The CPSA provides a private right of action for "[a]ny person who shall sustain injury by reason of any knowing (including willful) violation of a consumer product safety rule, or any other rule or order issued by the [Consumer Product Safety Commission ("CPSC")]." 15 U.S.C. § 2072(a). If a complaint does not identify such a rule or order, it fails to establish a private right of action. *See, e.g.*, *Scott v. Sona U.S.A.*, No. 1:08-CV-00625, 2011 WL 249452, at *1 (S.D. Ohio Jan. 25, 2011) ("[T]he CPSA does not create a private cause of action for the violation of any regulation, but rather, it more narrowly creates a cause of action when a party violates a consumer

3

product safety rule, or rule or order, of the [CPSC] promulgated under the CPSA."). The CPSA defines "consumer product safety rule" as "a consumer products safety standard described in [§ 2056(a)], or a rule under this chapter declaring a consumer product a banned hazardous product." 15 U.S.C. § 2052(6). Section 2056(a) in turn provides that the CPSC may promulgate consumer product safety standards in accordance with § 2058. *Id.* § 2056(a).

Section 2058(a) states that the CPSC may commence a proceeding for the development of a consumer product safety rule by publishing in the Federal Register an "advance notice of proposed rulemaking," which must satisfy six listed requirements. *Id.* § 2058(a). The first of these requirements says the notice must identify the product and the nature of the risk of injury associated with it. *Id.* § 2058(a)(1). The notice must also invite people to submit to the CPSC "an existing standard or a portion of a standard as a proposed consumer product safety standard." *Id.* § 2058(a)(5). Similarly, the notice must invite people to submit to the CPSC "a statement of intention to modify or develop a voluntary consumer product safety standard to address the risk of injury identified in [subsection (a)(1)] together with a description of a plan to modify or develop the standard." *Id.* § 2058(a)(5).

Section 2058(b) specifically deals with voluntary standards and provides that if a person submits a standard to the CPSC under subsection (a)(5), the CPSC may publish that standard as a proposed consumer product safety rule if it determines that the standard "would eliminate or adequately reduce the risk of injury identified in a notice under subsection (a)(1)" if promulgated. *Id.* § 2058(b)(1). Section 2058(b) further provides that if the CPSC determines that compliance with a voluntary standard submitted under subsection (a)(6) "is likely to result in the elimination or adequate reduction of the risk of injury identified in the notice" and that "it is likely that there will be substantial compliance with such standard," then the CPSC

4

> shall terminate any proceeding to promulgate a consumer product safety rule respecting such risk of injury and shall publish in the Federal Register a notice which includes the determination of the Commission and which notifies the public that the Commission will rely on the voluntary standard to eliminate or reduce the risk of injury, except that the Commission shall terminate any such proceeding and rely on a voluntary standard only if such voluntary standard is in existence.[2]

*Id.* § 2058(b)(2). The statute further states that before the CPSC may rely upon a voluntary standard, it "shall afford interested persons (including manufacturers, consumers, and consumer organizations) a reasonable opportunity to submit written comments regarding such standard." *Id.* § 2058(b)(2). The CPSA does not define "other rule or order" as used in § 2072(a).

In their Complaint, Plaintiffs contend they have a private right of action under the CPSA for Defendant's alleged violation of certain voluntary safety standards for hoverboards [Doc. 1, ¶¶ 68-70]. Defendant argues these voluntary standards do not classify as a promulgated rule or order and therefore do not give rise to a private right of action under § 2072 [Doc. 15, pg. 2]. In response, Plaintiffs point to a letter the CPSC issued on February 18, 2016 [Doc. 29-1][3] to manufacturers, importers, and retailers of self-balancing scooters "to urge [them] to make certain that self-balancing scooters that [they] import, manufacture, distribute, or sell in the United States comply with currently applicable voluntary safety standards, including all referenced standards and requirements contained in UL 2272 – *Outline of Investigation for Electrical Systems for Self-balancing Scooters*" [Doc. 29, pg. 2; *see* Doc. 29-1, pg. 1]. The letter further cautioned that "[s]elf-balancing scooters that do not meet these voluntary safety standards pose an unreasonable risk of fire to consumers" [Doc. 29-1, pg. 1]. The letter advised that the CPSC considers self-

---

[2] "For purposes of this section, a voluntary standard shall be considered to be in existence when it is finally approved by the organization or other person which developed such standard, irrespective of the effective date of the standard." *Id.* § 2058(b)(2).
[3] This letter was superseded by a subsequent CPSC letter [Doc. 29-2]. However, that letter was issued on February 22, 2018, after the incident in question [*see id.*].

balancing scooters that do not meet the applicable voluntary safety standards to be defective and stated that "they may present a substantial product hazard under Section 15(a) of the CPSA, 15 U.S.C. § 2064(a) or could be determined to be an imminent hazard under Section 12 of the CPSA, 15 U.S.C. § 2061" [*Id.*]. The letter warned that such products may be detained or seized if encountered at import or recalled if encountered domestically [*Id.*]. Finally, the letter stated the CPSC staff would be following up to ensure firms were meeting their obligations [*Id.* at pg. 2].

In support of their argument that Defendant's alleged violation of the voluntary standards referenced in the CPSC letter gives rise to a private right of action under § 2072(a), Plaintiffs cite § 2056(b), which states:

> (1) The Commission shall rely upon voluntary consumer product safety standards rather than promulgate a consumer product safety standard prescribing requirements described in subsection (a) whenever compliance with such voluntary standards would eliminate or adequately reduce the risk of injury addressed and it is likely that there will be substantial compliance with such voluntary standards.
> (2) The Commission shall devise procedures to monitor compliance with any voluntary standards—
>   (A) upon which the Commission has relied under paragraph (1);
>   (B) which were developed with the participation of the Commission; or
>   (C) whose development the Commission has monitored.

[Doc. 1, ¶¶ 69-70 (citing 15 U.S.C. § 2056(b))]. Plaintiffs' Complaint further contends these voluntary standards "were enforced by the CPSC through recall and seizure at import, actions which make clear that enforcement of the standard is 'voluntary' only to the extent that the CPSC was required to issue voluntary standards under the CPSA language and 15 U.S.C. § 2056(b)" [*Id.* at ¶ 70]. Plaintiffs have filed three articles discussing the seizure of hoverboards to demonstrate that the CPSC's letter "was not an empty threat" [Doc. 29, pg. 3; *see* Docs. 29-3, 29-4, 29-5]. Plaintiffs also filed "additional correspondence" between the CSPC and Underwriter Laboratories, Inc. ("UL"), the entity that wrote the voluntary standards referenced in the CPSC letter (UL 2272),

6

discussing CPSC staff's support of UL 2272 and the proposed effective date [Doc. 29-6]. Plaintiffs contend that the CPSC letter [Doc. 29-1], when read together with these other documents, "makes evident the existence of an acceptable standard being developed by UL in conjunction with the CPSC and presumably any manufacturers, distributors, and retailers in communication with UL" [Doc. 29, pg. 2].

Plaintiffs rely on a case out of the Southern District of Illinois for the proposition that voluntary standards can enjoy the force of law in certain circumstances [*Id.* (citing *Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 858 (S.D. Ill. 2006))]. At issue in *Alsup* was whether, for purposes of removal from state to federal court, the defendant had stated a colorable federal defense based on alleged preemption of the plaintiff's state-law product liability claims by the CPSA. *Alsup*, 435 F. Supp. 2d at 852. The Court found the CPSC had promulgated no regulations or safety standards with respect to the product at issue that could give rise to preemption. *Id.* at 852. The Court went on to state that although relevant voluntary safety standards existed, "typically voluntary safety standards do not enjoy the force of law." *Id.* at 853 (S.D. Ill. 2006) (citing *Pfeiffer v. Eagle Mfg. Co.*, 771 F. Supp. 1133, 1136 (D. Kan. 1991)). The Court noted:

> One court has suggested that voluntary safety standards might enjoy the force of law if, after public notice, the CPSC made written findings that compliance with such voluntary standards would eliminate or adequately reduce the risk of injury addressed and it is likely that there will be substantial compliance with such voluntary standards.

*Id.* (citing *Nat'l Kerosene Heater Ass'n, Inc. v. Com. of Mass.*, 653 F. Supp. 1079, 1086 (D. Mass. 1986)). *National Kerosene Heater* also dealt with whether a voluntary standard could serve as the basis for preemption of state product liability law by the CPSA. *Nat'l Kerosene Heater*, 653 F. Supp. at 1084. Both courts held that the respective voluntary standards could not serve as a basis for federal preemption. *Alsup*, 435 F. Supp. 2d at 853 ("[The voluntary standards] are minimum

7

safety standards . . . and therefore cannot support a claim of federal preemption of state law."); *Nat'l Kerosene Heater*, 653 F. Supp. at 1087 ("The procedure for formal reliance on a voluntary standard provided by § 2058(b)(2) would be rendered meaningless if a voluntary standard informally found to be entitled to deference under § 2056(b) were deemed a consumer product safety standard within § 2075(a).").

Plaintiffs contend UL 2272 satisfies the requirements laid out in *National Kerosene Heater* because "[t]he CPSC stated that the UL 2272 standard would adequately address the fire issues raised by other non-compliant products, and it is evident by its method of enforcement that it considered the 'voluntary standard' to be sufficient means to ensure compliance with the standard" [Doc. 29, pg. 3; *see Nat'l Kerosene Heater*, 653 F. Supp. at 1086.]. Alternatively, Plaintiffs contend UL 2272 was not actually voluntary, because the CPSC referred to the standards as "obligations," stated noncompliant products could be seized at import or recalled domestically, and obligated report of noncompliant products [Doc. 29, pg. 3-4]. Plaintiffs contend the CPSC's letter itself thus classifies as "any other rule or order issued by the Commission" under § 2072(a) [*Id.* at pg. 4].

In reply, Defendant argues UL 2272 was not "issued by the Commission" as required by § 2072(a) for a private cause of action [Doc. 30, pg. 2]. Defendant further argues *National Kerosene Heater* is inapplicable to this case because the issue was whether a voluntary standard can preempt state law, not whether the violation of voluntary standard can give rise to a private right of action [*Id.*]. Further, Defendant asserts that even if *National Kerosene Heater* was on-point, Plaintiffs have not alleged facts to establish that UL 2272 meets the requirements outlined in that case [*Id.* at pg. 3]. Defendant explains that no facts in the Complaint suggest the CPSC has made public findings that UL 2272 meets the requirements of § 2056(b) pursuant to § 2058(b)(2)

8

[*Id.*; *see Nat'l Kerosene Heater*, 653 F. Supp. at 1088]. Finally, Defendant argues the seizure of counterfeit hoverboards at the border is irrelevant, and Plaintiffs' assertion that the standards set out in UL 2272 are not actually voluntary contradicts the plain language of the letter [Doc. 30, pg. 3-4]. Defendant explains that § 2058(b) outlines the procedure the CPSC must follow to promulgate a rule based on, or formally rely on, a voluntary standard, and Plaintiffs have not alleged this procedure was followed or offered any authority to support their position [*Id.* at pg. 4].

The CPSA expressly limits a private right of action to violations of a consumer product safety rule or other rule or order issued by the CPSC. 15 U.S.C. § 2072(a). The CPSC did not issue UL 2272; rather, Underwriter Laboratories—a private safety organization—established these voluntary standards. The only thing the CPSC "issued" here was a letter urging manufacturers, importers, and retailers of self-balancing scooters to comply with the voluntary standards [*see* Doc. 29-1]. While Plaintiffs contend the letter signaled the CPSC's reliance on UL 2272 pursuant to § 2056(b), the CPSA's definition of "consumer product safety rule" only references § 2056(a), not § 2056(b). *See* 15 U.S.C. § 2052(6). Plaintiffs urge the Court to recognize that voluntary standards may sometimes enjoy the force of law; however, Plaintiffs merely cite two cases that mention this possibility in dicta. Even if the Court were to accept this argument, Plaintiffs fail to establish that the requirements suggested by these cases—public notice followed by specific written findings—have been met. Plaintiffs' alternative theory that the CPSC's letters themselves established that these voluntary standards were actually mandatory rules is a stretch, and Plaintiffs have offered no authority that would allow the Court to make such a finding.

Neither the voluntary standards at issue nor the CPSC's letter classify as "a consumer product safety rule, or other rule or order issued by the Commission." *See id.* § 2072(a). To hold otherwise would circumvent the plain meaning of the statute and the CPSA's own definitions.

Therefore, the Court finds Plaintiffs' Complaint does not contain allegations sufficient to establish a private right of action under the CPSA, and that claim must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

## IV. CONCLUSION

For the reasons stated herein, Defendant's Motion [Doc. 19] is **GRANTED**. Plaintiffs' federal Consumer Product Safety Act claim is **DISMISSED WITH PREJUDICE**. All other causes of action remain.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge
